1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DUSTIN THOMAS, KRISTEN
THOMAS

                    Plaintiffs,

        v.

STATE FARM FIRE AND CASUALTY
COMPANY,

                    Defendant.

CASE NO. C20-5982 BHS

ORDER

        This matter comes before the Court on Defendant State Farm Fire and Casualty

Company's Motion for Summary Judgment, Dkt. 24, and Plaintiffs Dustin Thomas and

Kristen Thomas's Motion for Partial Summary Judgment, Dkt. 28. The Court has

considered the briefing filed in support of and in opposition to the motions and the

remainder of the file and grants the Plaintiffs' motion and grants in part and denies in part

State Farm's motion for the reasons stated below.

## I.   BACKGROUND

        On February 8, 2020, a water supply line in Plaintiffs' home broke and caused

water damage to the main floor and basement. Dkt. 28 at 3. Plaintiffs immediately

informed State Farm of the damage and retained a mitigation company, DryTime

Restoration, to prevent further damage. *Id.* A State Farm adjuster first visited Plaintiffs'

home on February 26, 2020 at which point mitigation was still ongoing. *Id.* at 3–4.

DryTime completed the demolition and mitigation work and provided Plaintiffs

and State Farm an invoice on April 22, 2020 in the amount of $87,927.63. *Id.* at 4.

Plaintiffs also contracted with Minuteman Construction to reconstruct their home. *Id.* On

April 27, 2020, Minuteman estimated it would cost $200,581.00 to restore Plaintiffs'

home to its pre-loss condition. *Id.* State Farm paid Plaintiffs $185,426.63 on July 13,

2020 after State Farm was able to procure a different contractor to prepare a scope of

work and cost estimate based on a documentary review. *Id.*; Dkt. 24 at 7. The payment

included $32,590.33 for mitigation costs and $152,836.30 for repair costs. Dkt. 24 at 6.

State Farm also informed Plaintiffs that the payment would be revised after their

contractor was able to perform a physical inspection of the home. Dkt. 27, ¶ 33. State

Farm asserts that the delay in payment was due to a combination of factors, including

COVID-19, Plaintiffs refusing to permit State Farm's contractor to enter their home, and

disagreements between Plaintiffs' contractors and State Farm. Dkt. 24 at 2; Dkt. 27, ¶ 10.

State Farm's contractor conducted an in-person inspection of the home on July 15,

2020 and concluded that State Farm had overpaid by $8,759.93 because the appropriate

amount for repairs should have been $176,666.70 ($27,094.68 for remediation and

$149,572.02 for reconstruction). Dkt. 27, ¶ 41. State Farm did not seek return of

payment, but instead decided it would apply any overpayment as a credit to offset any

future claim asserted regarding the same elements of loss. *Id.* State Farm also informed

Plaintiffs on August 28, 2020 that if they still disputed the claim amount, the parties could pursue Appraisal to resolve their dispute per the parties' contract terms. *Id.* ¶ 43. State Farm made clear that they would not otherwise pay any additional amounts on Plaintiffs' claim.

Plaintiffs sued on September 4, 2020, alleging that State Farm breached their contract, acted in bad faith, and violated the Washington Consumer Protection Act ("CPA") and the Insurance Fair Conduct Act ("IFCA"). Dkts. 1-4, 7. Plaintiffs also sought *Olympic Steamship* fees. Dkt. 7 at 7. State Farm initiated Appraisal on November 23, 2020. Dkt. 27, ¶ 47. In Appraisal, each side appointed one appraiser, and those two appraisers appointed a third as an umpire. *Id.* The Appraisal Panel determined that Plaintiffs suffered $40,731.55 in mitigation damages and $168,325.99 for repairs. *Id.* The Panel also determined that Plaintiffs suffered $81,232.55 in "over-demolition" losses. *Id.* Plaintiffs then made clear to State Farm that they sought to recover their over-demolition losses. *Id.* ¶ 49. State Farm paid the additional losses found in Appraisal, including the over-demolition losses. Dkt. 24 at 3.

State Farm asserts that over-demolition is a separate claim completely—one caused not by the water damage but instead by DryTime performing unnecessary work. *Id.* at 7. Plaintiffs argue that over-demolition was part of their original claim because they sought to restore the home to its pre-loss condition. Dkt. 28. They argue State Farm acted in bad faith by failing to inform them of their over-demolition coverage and forcing them to bring suit to recover those damages. *Id.* State Farm ultimately treated Plaintiffs' losses

as two separate claims, subtracting the policy's $2,000 deductible from each claim. Dkt. 27, ¶ 49.

State Farm seeks summary judgment on all of Plaintiffs' claims, arguing that they reasonably disputed the amount of Plaintiffs' damages claim, did not breach the contract, and handled Plaintiffs' damages claims in good faith. Dkt. 24. Plaintiffs seek summary judgment on the claims related to State Farm's alleged violations of the Washington Administrative Code ("WAC"), which are Plaintiffs' bad faith and CPA claims, and on their claim for *Olympic Steamship* fees. Dkt. 28.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

1   The moving party bears the initial burden of showing that there is no evidence

2   which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*,

3   477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party

4   then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the

5   nonmoving party fails to establish the existence of a genuine issue of material fact, "the

6   moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

7   There is no requirement that the moving party negate elements of the non-movant's case.

8   *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has

9   met its burden, the non-movant must then produce concrete evidence, without merely

10  relying on allegations in the pleadings, that there remain genuine factual issues.

11  *Anderson*, 477 U.S. 242, 248 (1986).

12  **B.    Breach of Contract**

13          Plaintiffs' complaint alleges that State Farm breached the parties' contract by

14  refusing to pay the full amount to repair the property damage to their residence. Dkt. 7,

15  ¶ 5.2. After the complaint was filed and the parties proceeded through Appraisal, State

16  Farm fully paid the amounts calculated by the Appraisal Panel. State Farm moves for

17  summary judgment on the breach of contract claim, arguing that it did not breach the

18  contract because it ultimately paid the full amount due under the contract, as calculated in

19  Appraisal, and it handled both of Plaintiffs' claims in good faith. Dkt. 24 at 12. Plaintiffs

20  respond that State Farm breached their contract by treating the damages as two separate

21  claims, thereby withholding two separate $2,000 deductibles. Dkt. 31 at 20.

22

1    While State Farm may have initially breached the parties' contract by effectively

2    denying over-demolition coverage and failing to inform Plaintiffs of that coverage, that

3    contractual loss has been resolved. The remaining contractual issue is whether State Farm

4    breached the contract by considering the over-demolition damages a separate claim and

5    charging Plaintiffs a second deductible. No reasonable juror could determine that the

6    damages in this case should have been considered one claim rather than two. Although

7    the over-demolition would not have occurred absent the water loss, the over-demolition

8    occurred after Plaintiffs suffered the initial loss (even if shortly after), and the loss

9    attributable to over-demolition was caused by the contractor, not the initial water leak.

10   Even though both losses are covered by the same policy, they are separate claims as a

11   matter of law.

12   There is no viable, outstanding breach of contract claim. Therefore, State Farm's

13   motion for summary judgment as to Plaintiffs' breach of contract claim is GRANTED,

14   and that claim is dismissed with prejudice.

15   **C.    Bad Faith and CPA**

16   Plaintiffs assert both a bad faith tort claim and a CPA claim against State Farm,

17   which both stem from State Farm's alleged violations of the WAC.

18   Plaintiffs first claim that State Farm handled their insurance claim in bad faith.

19   Dkt. 7, ¶¶ 5.7–5.8. As part of their bad faith claim, Plaintiffs argue that State Farm

20   violated WAC 284-30-330 and WAC 284-30-350. Dkt. 28 at 7–9. Plaintiffs move for

21   summary judgment on this claim, arguing that State Farm's alleged WAC violations are

22   evidence of bad faith. *Id.* at 8. State Farm also moves for summary judgment on this

1   claim, arguing that it did not violate the WAC, nor did it act in bad faith because there

2   was a legitimate difference of opinion about the value of Plaintiffs' claims and because

3   Plaintiffs did not suffer any harm. Dkt. 24 at 9–12.

4         Plaintiffs also claim that State Farm violated the CPA, RCW Ch. 19.86, *et seq.*, by

5   engaging in unfair or deceptive practices. Dkt. 7, ¶ 5.12. Plaintiffs move for summary

6   judgment on this issue, arguing that State Farm's alleged WAC violations constitute *per*

7   *se* violations of the CPA. Dkt. 28 at 8. State Farm also moves for summary judgment on

8   this claim, arguing that its conduct in handling Plaintiffs' claim was reasonable. Dkt. 24.

9       **1.**    **WAC 284-30-330(7)**

10         An insurer violates WAC 284-30-330(7) by "[c]ompelling a first party claimant to

11   initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an

12   insurance policy by offering substantially less than the amounts ultimately recovered in

13   such actions or proceedings." A violation of WAC 284-30-330 constitutes a *per se*

14   violation of the CPA. *Truck Ins. Exch. v. Vanport Homes Inc.*, 147 Wn.2d 751, 764

15   (2002).

16         Plaintiffs argue that State Farm violated this provision because the Appraisal Panel

17   determined that State Farm owed $104,863.46[1] more under the policy than State Farm

18   agreed to pay prior to litigation and Appraisal. Dkt. 28 at 8. State Farm argues that most

19   of the additional amounts recovered in Appraisal were related to over-demolition

20   coverage and that Plaintiffs never filed an over-demolition claim. Dkt. 30 at 5–7. State

---

[1] State Farm paid $102,863,46 of this amount after subtracting a second $2,000 deductible.

ORDER - 7

1    Farm additionally argues that the remainder of the difference in payment was the result of

2    a genuine and reasonable dispute about the value of the claim and was not "substantial"

3    under WAC 284-30-330(7). *Id.* at 6.

4          State Farm correctly notes that most of the additional recovery was related to the

5    over-demolition damages. But that does not change the analysis here. Plaintiffs submitted

6    a claim to restore their home to its pre-loss condition. They provided State Farm with

7    documentary evidence, photographs, and access to their home to assess the damage and

8    renovations, and their contractors provided detailed invoices and quotes (hereafter

9    referred to as "contractors' documents"). Nevertheless, State Farm denied Plaintiffs a

10   substantial amount of coverage under their policy (a policy that included coverage for

11   over-demolition) and made clear that it would not pay anything further on the policy.

12   Those declarations forced Plaintiffs to initiate this litigation and to go through Appraisal.

13         State Farm's violation of WAC 284-30-330(7) constitutes bad faith as a matter of

14   law. Therefore, Plaintiffs' motion for summary judgment on their bad faith tort claim is

15   GRANTED. State Farm's violation of WAC 284-30-330(7) also constitutes a CPA

16   violation. Therefore, Plaintiffs' motion for summary judgment on their CPA claim is

17   GRANTED.

18         **2.      WAC 284-30-350(1) & (2)**

19         An insurer must "fully disclose to first party claimants all pertinent benefits

20   coverages or other provisions of an insurance policy or insurance contract under which a

21   claim is presented." WAC 284-30-350(1). Similarly, an insurer may not "conceal from

22   first party claimants benefits, coverages or other provisions of any insurance policy or

1  insurance contract when such benefits, coverages or other provisions are pertinent to a

2  claim." WAC 284-30-350(2).

3      Plaintiffs allege that they submitted a claim for insurance coverage to repair their

4  property to its pre-loss condition. Dkt. 28 at 9. Plaintiffs assert that the extent of damage

5  to their home was clear when State Farm's representatives conducted their on-site

6  inspection and were provided the contractors' documents. *Id.* In other words, Plaintiffs

7  argue that State Farm had a duty to inform them they had over-demolition coverage. State

8  Farm argues that an insurer is not required to predict every claim an insured my assert

9  and that Plaintiffs did not submit a request for their over-demolition damages until the

10 Panel determined there had been over-demolition, a determination that State Farm should

11 have made months earlier. Dkt. 30 at 7–9.

12     The Court agrees with Plaintiffs that this situation is analogous to cases involving

13 underinsured motorist coverage. In *Anderson v. State Farm Mutual Insurance Co.*, the

14 insured was in an accident with an underinsured motorist, and State Farm failed to

15 disclose the availability of underinsured motorist coverage. 101 Wn. App. 323, 327

16 (2000). State Farm argued that the coverage was not pertinent because the evidence

17 indicated the accident was the insured's fault even though the facts were in dispute and

18 there was credible evidence suggesting it was not the insured's fault. *Id.* at 330–31. In

19 that case, the court held that State Farm violated WAC 284-30-350 and thus had engaged

20 in bad faith as a matter of law and violated the CPA. *Id.* at 333. This was true even

21 though State Farm had a potential objection to the application of underinsured motorist

22 coverage.

1    Here, State Farm argues that this case is different from those arising out of

2  underinsured motorist coverage. Specifically, State Farm argues that "[a]n insurer does

3  not have an affirmative duty to discover additional damages that an insured has never

4  claimed or documented, nor does an insurer have a duty to intuit what an insured's

5  damages might be." Dkt. 30 at 7 (citing *Bridgham-Morrison v. Nat'l Gen. Assurance Co.*,

6  739 F. App'x 381, 383–84 (9th Cir. 2018)).

7    In *Bridgham-Morrison* the insured failed to disclose certain damages suffered, and

8  thus the insurer did not have a duty to intuit those undisclosed *damages*. 739 F. App'x at

9  383–84. In contrast, Plaintiffs claimed all damages to their home from the start. Plaintiffs

10  may not have understood that some of those damages fell under the purview of "over-

11  demolition," but that does not change the fact that the damages were disclosed. State

12  Farm was required to inform Plaintiffs of their over-demolition coverage in relation to

13  their water damage claim. Unlike in *Bridgham-Morrison* where the insurer was not

14  required to affirmatively *discover* additional damages, it should have been clear to State

15  Farm, after Plaintiffs submitted an invoice that was well over its own estimate and after

16  reviewing the contractors' documents, that there had been over-demolition. With that

17  understanding, and knowing that Plaintiffs sought to restore their home to its pre-loss

18  condition, State Farm acted in bad faith by failing to inform them of their over-

19  demolition coverage.

20    To prevail under the CPA, a plaintiff must establish each of the following

21  elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3)

22  public interest impact; (4) injury to plaintiff in his or her business or property; (5)

1   causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d

2   778, 780 (1986). A single violation of certain WAC provisions, including WAC 284-30-

3   350 constitutes a *per se* unfair trade practice and therefore satisfies the first element of a

4   CPA claim. *See Anderson*, 1010 Wn. App. at 332.

5          State Farm violated WAC 284-30-350 when it failed to disclose Plaintiffs' over-

6   demolition coverage. Thus, State Farm committed an unfair or deceptive act or practice.

7   That act or practice occurred in trade or commerce, it caused injury to Plaintiffs, and it

8   impacted the public interest. *See Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433 (2002)

9   ("the business of insurance affects the public interest" (internal quotation omitted)).

10         State Farm's violation of WAC 284-30-350 constitutes bad faith as a matter of

11  law. Therefore, Plaintiffs' motion for summary judgment on their bad faith tort claim is

12  GRANTED. State Farm's violation of WAC 284-30-350 also constitutes a CPA

13  violation. Therefore, Plaintiffs' motion for summary judgment on their CPA claim is

14  GRANTED.

15  **D.    IFCA**

16         Plaintiffs claim that State Farm violated IFCA, RCW 48.30.015, by unreasonably

17  denying their claim for coverage or payment of benefits. Dkt. 7, ¶ 5.20. State Farm moves

18  for summary judgment on this claim, arguing that no benefits were denied and its conduct

19  in handling Plaintiffs' claim was reasonable. Dkt. 24 at 13. Plaintiffs respond that State

20  Farm unreasonably denied payment of its over-demolition damages and its payment of

21  those damages after litigation commenced does not absolve them of their IFCA violation.

22  Dkt. 31 at 18–20.

1    IFCA establishes a cause of action for a "first party claimant to a policy of

2    insurance who is unreasonably denied a claim for coverage or payment of benefits by an

3    insurer." RCW 48.30.015(1). As explained elsewhere in this Order, State Farm did deny

4    Plaintiffs payment of over-demolition damages. Therefore, State Farm's motion for

5    summary judgment as to Plaintiffs' IFCA claims is DENIED.

6    Regulatory violations alone cannot constitute IFCA violations. *See Perez-*

7    *Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 684 (2017) ("IFCA does not

8    create an independent cause of action for regulatory violations."). In their motion for

9    summary judgment, Plaintiffs only discuss State Farm's alleged WAC violations and

10   *Olympic Steamship* fees. Plaintiffs do not discuss IFCA or raise any non-regulatory

11   argument as to how State Farm violated IFCA. Therefore, the Court interprets Plaintiffs'

12   motion as not seeking summary judgment on their IFCA claim.

13   **E.     Olympic Steamship Fees**

14   Plaintiffs also seek attorney fees under *Olympic Steamship Co. v. Centennial*

15   *Insurance Co.*, 117 Wn. 2d 37 (1991). Dkt. 7 at 7. Both Plaintiffs and State Farm move

16   for summary judgment on this issue. Dkts. 24, 28.

17   In Washington, "an award of fees is required in any legal action where the insurer

18   compels the insured to assume the burden of legal action, to obtain the full benefit of his

19   insurance contract, regardless of whether the insurer's duty to defend is at issue."

20   *Olympic Steamship*, 117 Wn.2d at 53. "[T]he rule articulated in *Olympic Steamship* is

21   applicable where the insurer forces the insured to litigate questions of coverage . . . ."

22   *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 33 n.6 (1995). "'Coverage means the

1    assumption of risk of occurrence of the event insured against before its occurrence.'"

2    *Kroeger v. First Nat. Ins. Co. of Am.*, 80 Wn. App. 207, 210 (1995) (quoting *Ryan v.*

3    *Cuna Mut. Ins. Soc'y*, 84 Wn.2d 612, 615 (1974)). "Coverage disputes include both cases

4    in which the issue of any coverage is disputed and cases in which 'the extent of the

5    benefit provided by an insurance contract' is at issue." *Leingang v. Pierce Cnty. Med.*

6    *Bureau, Inc.*, 131 Wn.2d 133, 147 (1997) (quoting *McGreevy*, 128 Wn.2d at 33).

7         On the other hand, "dispute[s] over the value of the claim presented under the

8    policy . . . are not properly governed by the rule in *Olympic Steamship*." *Dayton v.*

9    *Farmers Ins. Grp.*, 124 Wn.2d 277, 280 (1994). "Where the insurer admits coverage but,

10   in good faith, denies or disputes the value of the claim, [*Olympic Steamship*] does not

11   authorize fees." *Solnicka v. Safeco Ins. Co. of Ill.*, 93 Wn. App. 531, 533 (1999).

12           Often, however, there is a fine line between a coverage dispute and a
         claim dispute. The insurer may admit some coverage, but dispute the scope

13       of coverage and then contend the case involves a claim dispute. Coverage
         disputes include cases in which coverage is denied and those in which the

14       extent of the benefit is disputed. Coverage questions focus on such
         questions as whether there is a contractual duty to pay, who is insured, the

15       type of risk insured against, or whether an insurance contract exists at all.

             Claim disputes, on the other hand, raise factual questions about the
16       extent of the insured's damages. They involve factual questions of liability,
         injuries, and damages and are therefore appropriate for arbitration.

17   *Id.* at 534 (citations omitted).

18        Plaintiffs argue that this is a coverage dispute because State Farm denied them

19   coverage for their over-demolition losses. Dkt. 28 at 9–10. State Farm, on the other hand,

20   argues that this is a claim dispute because the parties disagreed about the amount of

21

22

1  damages and State Farm did not deny Plaintiffs' claim for over-demolition damages, it

2  just was not presented until Appraisal. Dkt. 30 at 9–10.

3        Here, as explained above, State Farm denied Plaintiffs' over-demolition coverage

4  by failing to pay their initial claim and failing to notify them of the availability of that

5  coverage. Thus, Plaintiffs are entitled to *Olympic Steamship* fees. Plaintiffs' motion for

6  summary judgment as to *Olympic Steamship* fees is GRANTED and State Farm's motion

7  for summary judgment as to the same issue is DENIED. The amount of such fees will be

8  determined at trial.

9  **III.  ORDER**

10        Therefore, it is hereby **ORDERED** that Defendant State Farm Fire and Casualty

11  Company's Motion for Summary Judgment, Dkt. 24, is **GRANTED in part and**

12  **DENIED in part**, and that Plaintiffs Dustin Thomas and Kristen Thomas's Motion for

13  Partial Summary Judgment, Dkt. 28, is **GRANTED**. The jury will be left to decide

14  Plaintiffs' IFCA claim and the amount of damages due under Plaintiffs' CPA, bad faith,

15  and IFCA claims if IFCA liability is found.

16        Dated this 7th day of January, 2022.

17

18  _____

19  BENJAMIN H. SETTLE
    United States District Judge

20

21

22